COMMERCIAL CAS. INS. CO. et al.
v. ABLES.

No. 32826.   Oct. 21, 1947.

*185 P. 2d 907.*

Crouch, Rhodes & Crowe, of Oklahoma City, and Welch & Welch, of Madill, for plaintiffs in error.

Little & Hamill, Ruel W. Little, and James C. Hamill, all of Madill, for defendant in error.

BAYLESS, J.   This is an appeal from the district court of Marshall county wherein the court rendered judgment in favor of the plaintiff, Elmer Ted Ables, against Grafe-Callahan Construction Company and the Commercial Casualty Insurance Company.

Ables entered into a contract of employment with the construction company on May 8, 1944, to work in the United Kingdom of Great Britain.  The employer agreed to provide Ables with voluntary compensation on the basis of United States Longshoremen's and Harbor Workers' Act, and in accordance with the contract did procure a policy of insurance from the Commercial Casualty Insurance Company which contained an endorsement providing for payment of benefits in accordance with the provisions of the Longshoremen's Act.   Ables' employment did not fall within the jurisdiction of this act, however.

On January 29, 1945, the plaintiff, Ables, while working for the defendant, Construction Company, at Morpeth,

England, received an accidental injury. He had a large group of men working under his supervision at the time. In addition to his primary duties, it was his job to transport these workmen to and from their place of employment. The company provided him with a truck for this purpose, which he customarily kept parked in a vacant lot at night about a block from his home. The accident occurred at about 7 p.m. He had delivered all of the workmen to their homes, parked the truck in the vacant lot, and as he jumped from the truck in order to avoid a snow drift, his left foot struck some hard object, causing a fracture of the bone. The following day plaintiff was taken to a government hospital and his left foot placed in a cast. He was evacuated to the United States and upon his arrival in Dallas, Tex., on March 8, 1945, he contacted an agent of his employer, advised the agent of his injury, and was told to go to a certain building in Dallas to consult a doctor. Not knowing what doctor to consult, he chose to see Dr. R. P. Addison, whose office was in the building to which he was directed. Dr. Addison removed the cast from plaintiff's foot and ankle, made X-ray pictures of the injured limb, and treated him until July 19, 1945, at which time he was released from further treatment and pronounced able to return to work. Plaintiff went to work for another company on August 21, 1945. According to his own testimony, from that time until the date of trial he suffered considerable pain from his foot and ankle.

The defendants advance a number of contentions as grounds for reversal of the judgment. It is necessary to detail many facts in discussing these propositions which thus far have been omitted.

Defendants' first contention is that the accidental injury did not arise out of and in the course of the employment. Section 2 of the Longshoremen's Act (33 U.S.C.A. 902) provides:

"The term injury means accidental injury or death arising out of and in the course of employment, . . . "

In Ward v. Cardillo et al., 135 Fed. 2d. 260, the court held:

"Where employer arranged to furnish employee transportation to and from work in employer's truck which regularly passed employee's home in lieu of a requested increase in salary and employee was struck by another vehicle while crossing road to where employer's approaching truck would stop, employee's injuries 'arose out of and in course of employment' since the risks attendant on employee's crossing the road were incident to transportation in the truck and were assumed for the mutual convenience of the parties. Longshoremen's 'and Harbor Workers' Compensation Act, Sec. 1 et seq. 33 U.S.C.A. Sec. 901, et seq., D. C. Code 1940, Sec. 36-501, 33 U.S.C.A. Sec. 901 note."

This court has construed similar language in the following cases: Cary v. State Industrial Commission, 147 Okla. 162, 296 P. 385; Sapulpa Ref. Co. v. State Industrial Comm., 91 Okla. 53, 215 P. 933; and R. J. Allison, Inc., et al. v. Boling et al., 192 Okla. 213, 134 P. 2d 980. We stated in the Allison Case, at page 215:

". . . The general rule, first above stated, does not apply where the employer agrees to, and does, furnish transportation to and from the place of work, as an incident of the employment, and this despite the fact that wages are not paid while the employee is going to and from the place of work. McGeorge Corporation v. State Industrial Commission, 180 Okla. 346, 69 P. 2d 320. See, also, Cary v. State Industrial Commission, 147 Okla. 162, 296 P. 385; Ford v. Holt, 191 Okla. 534, 131 P. 2d 67; 87 A.L.R. 250, note. . . ."

Where an employee, as part of his duties, is required to transport fellow employees to and from their work, it would be a strange rule indeed to hold that his duties cease and his employment for the day terminates as soon as the passengers are delivered. He could not abandon the truck at that point. It was contemplated that he would, as part of his job, drive the truck to the place where it was cus-

tomarily kept at night. The fact that this place was a vacant lot one block from plaintiff's home does not affect the relationship of employer and employee. We hold that the injury arose out of and in the course of the employment.

Defendants next urge there is no evidence to show that the alleged permanent disability was caused by the accidental injury. We have examined the record and find this contention to be without merit. Plaintiff's testimony established that the disability to his left foot and ankle was the result of the injury of January 29, 1945, and this was corroborated by several doctors.

Defendants' third contention is that there is no competent evidence to support the judgment awarding temporary total disability from July 19, to August 21, 1945. Dr. Addison released plaintiff on July 19th, advising him that he was able to return to work. The doctor testified that he had a discussion with plaintiff on that day; that plaintiff was anxious to return to work, but that he was afraid if he went to work too soon his ankle would give him trouble. Plaintiff went to work for another company on August 21, 1945. He testified that he was not able to work until that date on account of his injured foot.

In Skelly Oil Co. v. Rose, 176 Okla. 313, 55 P. 2d 1019, we held:

"When an injury is of such a character as to require skilled and professional men to determine the cause, nature, and extent thereof, the question is one of science requiring the testimony of skilled professional persons for its determination. . . .

"The questions of when temporary total disability ceases and when permanent partial disability commences are questions of fact to be determined from the evidence. Findings determining these questions cannot be sustained when there is an entire absence of evidence supporting the same."

There is no competent evidence to sustain the finding and judgment that plaintiff suffered temporary total disability between July 19th and August 21st, and the judgment awarding him damages or compensation for this period is erroneous.

Defendants next contend that the trial court could award plaintiff only such sum for permanent partial disability as had accrued at the time the action was commenced. Title 33, U.S.C.A. §914, provides:

"Sec. 14 (a), Compensation under this Act shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer.

"(b) The first installment of compensation shall become due on the fourteenth day after the employer has knowledge of the injury or death, on which date all compensation then due shall be paid. Thereafter compensation shall be paid in installments, semimonthly, except where the deputy commissioner determines that payment in installments should be made monthly or at some other period."

The court found that plaintiff had a 33 1-3 per cent permanent disability to his left foot and awarded a lump sum judgment for 57.66 weeks at $25 per week, or a total sum of $1,441.50. Defendants' contention that the trial court was without authority to render judgment for installments not due at the time of the judgment might be well taken under the authority of Massachusetts Bonding & Insurance Co. v. Reeves, 193 Okla. 441, 145 P. 2d 381, but for the fact that section 14, supra, has a further provision authorizing a lump sum payment. This provision is as follows:

"Whenever the deputy commissioner determines that it is in the interest of justice, the liability of the employer for compensation, or any part thereof as determined by the deputy commissioner with the approval of the commission, may be discharged by the payment of a lump sum equal to the

present value of future compensation payments commuted, computed at 4 per centum true discount compounded annually. . . ."

At the time of the trial, 37.43 weeks of the 57.66 weeks had elapsed, leaving 20.23 weeks which the court should have commuted at 4 per cent in accordance with the above provision. Although the amount is very small, the court erred in failing to commute the payments which had not accrued at the date of trial. The judgment of the trial court contains this provision:

"It is further ordered that the judgment above set out shall be subject to the right of plaintiff to seek additional compensation upon a showing of a change in condition, as provided in Section 22 of the United States Longshoremen's and Harbor Workers' Compensation Act."

The portion of the judgment quoted above is ordered vacated and the plaintiff's right to seek additional compensation upon a showing of change in condition will be the same as if the above-quoted portion of the judgment and the court's finding in accordance therewith had not been made and entered. We decline to pass upon plaintiff's rights upon a showing of change in his condition until the happening of such contingency.

The defendant, Insurance Company, urges that plaintiff, in refusing to accept the company's offer to settle his claim for $500 and execute a release of all claims against his employer, thereby released the insurer of its direct obligation to pay the plaintiff compensation for his injuries, and for that reason plaintiff would have to recover first against the employer before liability on the part of the insurer would accrue. This point was not directly raised in the lower court by motion for new trial or by petition in error in this court. However, as we view it, it is now immaterial whether the liability of the insurer exists under a third party beneficiary contract or by reason of its

obligation to indemnify the employer. The employer is liable in either event and the insurer is jointly and severally liable on the supersedeas bond filed herein.

It follows from what has been said that the judgment awarding temporary total disability beyond July 19, 1945, was erroneous. From that date until August 21st is 4 5-7 weeks. Computed at the rate of $25 per week, the excessive amount is $117.85. Of the 57.66 weeks allowed for permanent partial disability, 37.43 weeks had elapsed at the date of trial, leaving 20.23 weeks at $25 per week to be commuted, which will result in a deduction of $4.63 from the award for permanent partial disability. The deduction of these sums from the trial court's judgment of $2,087.92 leaves a remainder of $1,965.44, which we hold to be the correct amount.

The judgment as modified is affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, CORN, and GIBSON, JJ., concur.