Jesse J. HARRIS, Petitioner,

v.

LA QUINTA, Lumberman's Mutual Insurance and The Workers' Compensation Court, Respondents.

No. 85777.

Supreme Court of Oklahoma.

April 15, 1997.

As Corrected May 19, 1997.

Gus A. Farrar, Farrar & Farrar, P.C., Tulsa, for Petitioner.

Larry G. Taylor, Ellen C. Edwards, Feldman, Hall, Fronton, Woodward & Farris, Tulsa, for Respondents.

SIMMS, Justice.

Claimant, Jesse J. Harris, worked as head of maintenance for La Quinta ("employer") at one of its inns. After working overtime one evening the claimant was injured in an automobile collision while driving home. He sought compensation, which the trial tribunal denied for want of an injury arising out of and in the course of employment. The claimant sought review, and the Court of Civil Appeals vacated the order and remanded the claim. The dispositive issue on certiorari is whether the claimant had been performing a *special task* for the employer before leaving work. We answer negatively and hold that the Workers' Compensation Court properly denied this claim.

 Generally, an injury suffered by an employee while on the way to or from his or her regular work is not compensable. Two exceptions to the rule are (1) when the accidental injury is sustained while going to perform, or leaving after performing, a special task, outside of his or her regular hours and at the employer's request,[1] and (2) if the employer has agreed, as an incident to the employment, to transport the employee to and from the place of work.[2] *R.J. Allison, Inc. v. Boling,* Okl., 192 Okla. 213, 134 P.2d 980, 981 (1943) (the court's syllabus ¶ 1). There is no dispute that the claimant in this case provided his own transportation. The second exception to the general rule therefore does not apply. We focus solely on the applicability of the special-task exception.

As head of maintenance the claimant was charged with performing all maintenance work necessary to keep rooms rentable. Janitorial tasks were included. He also drove a van to provide shuttle service for guests. The usual hours of work were from 8:00 a.m. to 4:30 p.m., with 30 minutes for lunch. Working overtime was not unusual. When he did work extra hours, it was because of a need to keep or to make a room available.

Prior to the claimant's injury the employer had been remodeling the inn. Its decor was changed to conform with the franchise's new logo and color scheme. The remodeling was done by an independent contractor. There was no dispute that the claimant's normal duties did not include new construction. Interior signs, however, needed to be replaced to complete the change. This task was assigned to the claimant, who was told that the signs needed to be replaced by the following day, when corporate representatives were expected to arrive. The claimant worked overtime to complete the job, for which he received appropriate pay. He had never before installed new signs, but his duties did include maintaining them.

Claimant argues that he was performing a special task, because installation of new signs was different from his usual and ordinary tasks and because the assignment was in response to an urgency "created by the deadline upon which the job needed to be completed." These factors alone, however, do not make this claim compensable. The following cases illustrate how the special-task exception has been applied, where injury or death occurred while going to or coming from work.

In *Dawson v. Oklahoma City Casket Co.,* Okl., 322 P.2d 642, 645 (1958), the employee, who usually lined and trimmed caskets, "was requested to and did perform extra work outside of his regular working hours consisting of unloading coal, work other and differ-

---

1. *Stroud Municipal Hospital v. Mooney,* 933 P.2d 872 (1996).

2. Other exceptions have been recognized as well. See, *e.g., Weatherbee Electric Company v. Duke,* Okl., 294 P.2d 298, 301 (1955), where the employee was required to be upon the highways and had transported supplies owned by the employer and needed for jobs; *Max E. Landry, Inc. v. Treadway,* Okl., 421 P.2d 829, 831 (1966), where the employer owns, controls, or acquiesces in the use of, the area in which the injury occurs; *Jack Coates Field Service Company v. Dutton,* Okl., 415 P.2d 924, 926 (1966), where the employer pays traveling expenses.

ent from the work he was required to do in the usual and ordinary course of his employment. He was engaged in performing a special task for the benefit of his employer at the time he sustained his injury." In *Impson v. Dillard's Brown–Dunkin Co.*, Okl., 489 P.2d 483, 484 (1971), the employee "was a sales lady and the taking of an inventory was a special task outside of her regular duties. The special task was to be performed on Sunday outside of her regular hours of employment as a sales lady during week days."

In *Thurston Chemical Co.*, Okl., 285 P.2d 403 (1955), the employee was a weigher, but he frequently worked in the dry-mix department of the company's plant. At the end of one working day a problem was discovered in the wet-mix department, making it "impossible for the regular crew to operate the modulating machine until the storage bin or storage area was cleared." The claimant in that case was directed to appear at the plant the next morning, four hours earlier than usual, to help clear the area. The next morning he left for work at 3:30 and died in an automobile collision on the way to the plant. The death was held to be compensable because the employee "was required to perform extra work outside of his regular work hours and work other and different from the work he was required to do in the usual and ordinary course of his employment, work caused by reason of emergency arising at the wet mix department of the plant." 285 P.2d at 406.

Two cases upon which the claimant heavily relies are *R.J. Allison, Inc. v. Boling, supra,* and *Anderson Construction Co. v. Franklin,* Okl., 315 P.2d 785 (1957). In *Boling* an automobile mechanic was called back to work after working a full day (from 8:00 a.m. to 6:00 p.m.). An urgency arose from the need to "repair a truck that had to be sent out by 2:00 a.m. the next day." The employer agreed to transport the employee to the place of business. The mechanic began working at 8:00 p.m. and finished the job at 11:00 p.m. The employer did not provide the employee with return transportation. "After waiting a few minutes and deciding he was not going to be given transportation home, he started walking home. As he was walking along the highway that he usually traveled,

and which he would have traveled if the agreement to transport him home had been observed, he was run into by a drunken motorist and received the injuries complained of." 134 P.2d at 982. This Court upheld the compensability of the claim because the record supported the finding that the employer had agreed to provide transportation to and from the place of business. *Id.* at 983.

In *Franklin* the claimant was a motor patrol operator for a road construction company. Inclement weather caused work to stop on a roadbed ready for placement of a black top. "The removal of the snow and ice was required in order to protect the road bed, and was a special benefit to the employer in saving the roadbed." 315 P.2d at 787. The employee was qualified to do the job, so the employer "sent three men with a grader to the site and directed the decedent to meet them at the location...." Later that evening the claimant was killed on the same road he had traveled to reach the site. 315 P.2d at 787. This Court sustained an award for death benefits, concluding that it is supported by competent evidence:

> The decedent was directed to take this trip and blade the prepared roadbed. It was a special mission at the direction of the employer and the circumstances show that there was an emergency demanding the work be done immediately to preserve the roadbed.

*Id.* at 788.

Here, the claimant maintains (a) that the work he was required to perform beyond his regular hours was "other and different from the work he was required to do in the usual and ordinary course of employment" and (b) that even if this is not so, the urgency necessitating that the task be performed on a specific date, requiring the claimant, at the request of his employer, to work outside his regular working hours, calls for a finding that this was a special task. The claimant correctly views the distinctions regarding the nature of the task as "extremely important."

■ While the specific task of replacing interior signs may not have been a part of the claimant's regular or routine duties, the record contains competent evidence indicat-

ing that the task was within the realm of general maintenance. The installation of interior signs is *not* at variance with the duties that are reasonably expected to be encompassed by the position occupied by this claimant.[3]

As for the "urgency" with which this claimant was faced, it does not rise to any level which might make this claim compensable. The claimant began performing a maintenance-related task during regular working hours and, at the employer's direction, stayed and worked overtime merely to complete the same task.

Opinion of the Court of Civil Appeals is Vacated. Order of the Workers' Compensation Court Denying this Claim is Sustained.

KAUGER, C.J., SUMMERS, V.C.J., and LAVENDER, HARGRAVE, OPALA and WATT, JJ., concur.

HODGES and ALMA WILSON, JJ., concur in part, dissent in part.

**3.** The following cases illustrate other circumstances in which the special-task exception was held to be inapplicable. See, for example, *Schell v. Blue Bell, Inc.*, Okl.App., 637 P.2d 914 (1981), where the nature of the task performed during overtime was determinative. The employee worked as a night cutting room supervisor, who, for the three-month period prior to his death, had not worked beyond normal hours on Fridays. Although staying at work beyond regular hours without overtime pay was not unusual, the employee was scheduled to work overtime on one particular Friday. He died in an automobile accident on the way home. The claimant's surviving spouse argued that working outside regular hours placed the claim within the special-task exception. The appellate court rejected this argument, concluding that the tasks he performed were "completely indistinguishable from his regular work." 637 P.2d at 916.

In *Richardson v. Pitts*, Okl., 408 P.2d 327 (1965), a waitress/cashier, who usually had Sundays off, was called to work on several Sundays preceding her accident, when the owner could not find a substitute. The employee was injured in an automobile collision on the way to work one Sunday morning. Because she was scheduled to do the same work she regularly performed, the special-task exception did not apply.