1999 OK 82

Randy G. BARNHILL, Petitioner,

v.

SMITHWAY MOTOR EXPRESS, Great West Casualty Company, and The Workers' Compensation Court, Respondents.

No. 92,179.

Supreme Court of Oklahoma.

Oct. 12, 1999.

Bob Burke, Oklahoma City, Oklahoma for Petitioner.

Kent R. McGuire and Derrick T. DeWitt of Whitten, McGuire, Terry & Roselius, Oklahoma City, Oklahoma for Respondents, Smithway Motor Express and Great West Casualty Company.

LAVENDER, J:

¶ 1 The issue on certiorari is whether the decision of an Oklahoma Workers' Compensation Court three-judge panel is supported by competent evidence. The decision affirmed a trial judge's denial of benefits to claimant, a truck driver, for injury suffered at his home on the last day of his vacation, when he fell off the step(s) of employer-owned tractor (cab) while attempting to put a small refrigerator owned by him into the cab. The trial judge's denial was based on finding the injury did not arise out of and in the course of employment. We hold the panel decision is supported by competent evidence and the Court of Civil Appeals (COCA) erred in vacating it and remanding for a compensation award.

## PART I. BURDEN OF PROOF AND STANDARD OF REVIEW.

¶ 2 To be compensable under the Oklahoma Workers' Compensation Act (Act), 85 O.S.1991, § 1 et seq., as amended, an injury must arise out of and in the course of an employee's employment. 85 O.S. Supp. 1997, § 11(A); *Nineteenth Seed Co. v. Townsend*, 1964 OK 183, 394 P.2d 531, 533. The issues of whether an injury did or did not arise out of and in the course of employment are ordinarily viewed as involving factual determinations to be resolved by the compensation court under the circumstances of each particular case. *See Morris v. City of Oklahoma City*, 1979 OK 174, 606 P.2d 1129, 1130; *Garr v. Collins*, 208 Okla. 113, 253 P.2d 838, 839 *Second Syllabus* (1953). The burden of proof is on claimant to show the disability for which compensation is sought was caused by an accident arising out of and in the course of employment. *Jarvis v. Hopkins*, 1967 OK 209, 434 P.2d 208 *First Syllabus*. Upon claimant falls the responsibility to adduce sufficient factual proof on these issues to establish compensability, and it is he/she that carries the burden of both producing evidence and persuading the trier on these critical matters. *Corbett v. Express Personnel*, 1997 OK 40, 936 P.2d 932, 934 f.n. 5; *American Management Systems, Inc. v. Burns*, 1995 OK 58, 903 P.2d 288, 291.

¶ 3 In that the questions are factual in nature, an appellate court uses the any-competent-evidence review standard in examining a compensation court's resolutions in regard thereto. *American Management Systems, Inc. v. Burns, supra*, 903 P.2d at 290. This standard requires the compensation tribunal's non-jurisdictional findings not be disturbed on review if supported by competent proof. *Id.* Only where there is no conflict in the evidence, and no opposite inferences may be drawn from undisputed proof, is it proper to treat such matters as questions of law. *Lanman v. Oklahoma County Sheriff's Office*, 1998 OK 37, 958 P.2d 795, 798; *Thomas v. Keith Hensel Optical Labs*, 1982 OK 120, 653 P.2d 201, 203; *Rush Const. Co. v. Woodward*, 159 Okla. 72, 14 P.2d 409 *Second Syllabus* (1932). Whenever

conflicting/inconsistent inferences may be drawn from undisputed facts, the issue is one of fact, not one of law. *Lanman, supra,* 958 P.2d at 798 f.n. 4. In the final analysis, only when there is a lack of competent evidence to support a compensation court's determination(s) as to whether an injury does or does not arise out of and in the course of employment may an appellate court disturb a trial court's decision [*Id.* at 798]—if there is competent proof the decision must be sustained.

## PART II. FACTS AND PROCEDURAL BACKGROUND.

¶ 4 In April 1998 Randy G. Barnhill (claimant), a truck driver for respondent, Smithway Motor Express (employer)[1] sought benefits in the Oklahoma Workers' Compensation Court for a back injury. In June 1998 a hearing was held on the issues of temporary total disability and continuing medical treatment. In defense, employer asserted the injury did not arise out of and in the course of employment. Claimant was the sole live witness at the hearing and his testimony supplied the only depiction of the circumstances surrounding the accident.[2]

¶ 5 The accident occurred on March 31, 1998, the last day of an approximate week long vacation for claimant. In the afternoon of the 31st, at his home, he fell off the step(s) of employer-owned tractor (cab) while attempting, with his wife's assistance, to put a small refrigerator owned by him into the cab.[3] The fall injured his back. After the fall, claimant used a home jacuzzi to see if that would help his back. Apparently, it did not remedy the situation and he called employer's after-hours dispatch to inform employer of the accident. He then went to a hospital emergency room. As of the June hearing, he had not returned to work.

¶ 6 Claimant testified he used the refrigerator to store the meals (food and beverage) he consumed on his over-the-road trips as a

truck driver for employer. He also testified that, immediately before attempting to load the refrigerator into the cab, he had successfully loaded into it a week's worth of clothing, his own C.B. radio, and the bedding he would use during his next trip on the road. The refrigerator, which was empty, was the last item attempted to be loaded on the 31st.

¶ 7 Claimant acknowledged the refrigerator was for his own personal convenience and he traveled with it because he saved a substantial amount of money through its use, rather than stopping at commercial eateries (e.g. truck stops) for his meals. He also testified, in his view, bringing the refrigerator was a necessity for him because of the cost savings. He admitted no one with employer told him to bring the refrigerator on his trips—i.e. whether or not to bring it was a matter of his personal choice. He also testified he knew other truck drivers who worked for employer that brought refrigerators on their trips. Claimant also testified using the refrigerator saved time on his trips because he could eat out of it in fifteen (15) to twenty (20) minutes by stopping at the side of the road or at a rest area, whereas it would take an hour to an hour and a half to stop at a regular truck stop restaurant.

¶ 8 Claimant also explained, the refrigerator was powered by plugging it into the cigarette lighter in the cab and he put it in the day before he was to leave on an over-the-road trip because it took about five hours to cool down. His testimony also revealed he understood that on April 1st he was to drive the tractor to employer's terminal to hook a trailer up to it and he was to begin an approximate week-long stint as a truck driver for employer, although he did not know his itinerary as of March 31st. He also testified he talked to one of employer's dispatchers the day before the accident, who told him he would be beginning a trip on the 1st and he was to report to the terminal at

---

1. Employer's workers' compensation insurer is respondent, Great West Casualty Company.

2. Certain medical records and reports were submitted at the June 1998 hearing, but they are not determinative of the issue(s) as to whether claimant's injury did or did not arise out of and in the course of his employment. Although one or

more of the reports contain a rendition of claimant's accident, as recounted by him, no information related therein appears inconsistent with claimant's live testimony, and neither claimant or respondents assert otherwise.

3. Apparently, the fall occurred from the outer, upper step leading into the cab.

7:30 a. m. No direct evidence is contained in the record that 7:30 a.m. was somehow an unusual or earlier than normal· time for claimant either to begin an over-the-road trip or to report to the terminal when a trailer was required to be picked up there before commencing an over-the-road trip.

¶ 9 At the time of the accident, claimant had been working for employer for about twenty-five (25) months. His testimony disclosed he was paid on a mileage basis, but the details concerning how the mileage-pay worked are not explicitly contained in the record. In such regard, the record contains no evidence that would mandate a finding he was paid mileage for the distance traveled in driving the cab from his home to the employer's premises (i.e. the terminal) where he would pick up—i.e. hook it up to—a trailer. There is also no evidence that claimant was paid anything by employer to keep the cab at his home or that he was in any manner reimbursed for doing so. Also, the record contains no explanation as to why he was allowed to keep the cab at his home during his vacation or what benefit, if any, employer gained thereby, although claimant did essentially testify it was normal for him to keep the cab there in between his over-the-road trips. Further, no direct evidence was presented that eating out of his refrigerator, rather than patronizing commercial eateries, in any manner lessened the mileage traveled between his destinations so that employer would be liable for less pay to him for any of his over-the-road trips.[4]

¶ 10 Based on the above evidence, the trial judge denied claimant benefits. The denial was anchored on finding he did not sustain an accidental injury arising out of and in the course of employment. A three-judge panel affirmed and claimant appealed. The COCA vacated the panel's decision and remanded with direction to award compensation, ruling, as a matter of law, the evidence mandated a finding the back injury arose out of and in the course of claimant's employment. Em-

ployer sought certiorari, which we previously granted. We now vacate the decision of the COCA and sustain the panel's decision because it is supported by competent evidence.

## PART III. THE DECISION DENYING BENEFITS, BASED ON FINDING CLAIMANT'S INJURY DID NOT ARISE OUT OF AND IN THE COURSE OF EMPLOYMENT, IS SUPPORTED BY COMPETENT PROOF.

¶ 11 Workers' compensation benefits are due an injured worker only when the injury both arises out of and in the course of employment. *Thomas v. Keith Hensel Optical Labs, supra,* 653 P.2d at 202. The two elements are separate and distinct and both must be met before an injury comes within the confines of the Act. *Id.* The phrase "in the course of" employment relates to the time, place or circumstances under which an injury occurs. *Id; Cudd Pressure Control v. McLemore,* 1996 OK CIV APP 9, 916 P.2d 850, 852. To be considered in the course of employment an accidental injury must occur within the period of employment at a place where the workman reasonably may be and while he is reasonably fulfilling a duty of his employment or engaged in doing something incidental thereto. *Estate of Smith v. Hearon,* 1967 OK 43, 424 P.2d 970, 971–972. The in course of element tests whether, at the critical moment, claimant was on a mission for the employer. *Lanman v. Oklahoma County Sheriff's Office, supra,* 958 P.2d at 799.

¶ 12 On the other hand, the phrase "arises out of" employment contemplates a causal relationship between the act engaged in at the time the injury occurs and the requirements of employment. *Cudd Pressure Control, supra,* 916 P.2d at 852. To meet the arising out of prong it must appear to the rational mind, upon considering all the circumstances, that a causal connection exists

---

4. Claimant also testified he had been awarded workers' compensation benefits for a 1993 injury to the same general area of the back injured on the 31st and the previous injury occurred while working for a prior employer. After the 1993 injury claimant received vocational rehabilitation and learned to become a truck driver. He further disclosed he had an agreement with employer that he was to do no lifting as a truck driver, i.e. he was hired to drive a truck, not to unload freight.

between the condition(s) under which the work is to be performed and the resulting injury. *City Bus Co. v. Lockhart,* 204 Okla. 314, 229 P.2d 586, 588 (1951).

¶ 13 The normal rule as to truck drivers (i.e. a traveling employee) is that, when in travel status, he/she is considered in the course of employment from the moment a work-related journey begins until its very end—even during meals, rest periods and sleep, unless the journey is interrupted by a purely personal errand. *Fox v. National Carrier,* 1985 OK 91, 709 P.2d 1050, 1055 (Opala, J., concurring in part; dissenting in part); *Bayless v. Sparkman Livestock Sales,* 1959 OK 36, 350 P.2d 233, 235. Obviously, under the facts concerning claimant's accident, the normal rule is inapplicable. The accident—occurring in the afternoon of March 31st while claimant was still on vacation—took place a minimum of thirteen and one half hours before he was scheduled to arrive at employer's terminal at 7:30 a. m. on April 1st to pick up a trailer and begin his next over-the-road journey. Here, claimant clearly had not yet begun any journey for his employer and he was plainly not in travel status when the accident occurred.

¶ 14 Presumably because he realizes he was not in travel status at the time of the accident, claimant does not rely on the normal rule regarding traveling employees who are in travel mode to support his claim for compensability (as to either the in course of or arise out of requirements). Instead, he essentially raises two arguments: 1) use of the refrigerator on his trips served dual purposes, not only benefitting him by its cost savings, but saving time for his employer on his journeys—so, therefore, an injury occurring during its loading was within the Act's coverage; and 2) because the tractor was owned by employer and his accident occurred when he fell off its step(s), the accident should be viewed as one occurring on employer's premises. The COCA also equated loading the cab with preparing to go to work on the employer's premises. Further, although recognizing the situation was not one involving any special task exception to the usual rule that injuries incurred while an employee is traveling to or from work are not

compensable, the COCA believed that because claimant was told he must be at work "early" the next morning he, of necessity, had to load the cab either the night before or the next morning and, therefore, a rationale akin to the special task exception could be applied. Finally, the COCA concluded the accidental injury in this case was inextricably connected with the necessities created by claimant's work as a truck driver. None of these arguments or positions are persuasive.

¶ 15 To support the on-premises argument claimant relies on cases such as *Barre v. TCIM Services, Inc.,* 1998 OK CIV APP 179, 971 P.2d 874 and *Furr v. Wal-Mart,* 1998 OK CIV APP 147, 966 P.2d 1193. *Barre* applies the principle that injuries sustained while going to and coming from work, **when occurring on employer's premises,** are normally deemed to have arisen out of and in the course of employment. *See Fudge v. University of Oklahoma,* 1983 OK 67, 673 P.2d 149, 150. The basis behind the principle is that, for workers' compensation purposes, the course of employment does not begin with the actual work a claimant is employed to do, but covers the period between entering employer's premises a reasonable time before beginning any actual work and leaving the premises within a reasonable time after the day's work is done. *Greenway v. National Gypsum Co.,* 1956 OK 88, 296 P.2d 971, 972 *First Syllabus.* Compensability for such on-premises accidental injuries is a recognized exception to the general rule that injuries occurring off-premises, while an employee is going to or returning from his workplace, are not considered compensable. *Neale v. G & H Decoy,* 1998 OK CIV APP 172, 972 P.2d 881, 882. The general rule concerning such off-premises injuries primarily results from the fact that going to and coming from work is the product of the employee's own decision of where he desires to live, a matter ordinarily of no interest to the employer [*F.W.A. Drilling Co. v. Ulery,* 1973 OK 82, 512 P.2d 192, 194] and that ordinarily a person's employment does not begin until he/she reaches the place of employment. *Matter of Death of Boyd,* 1994 OK CIV APP 175, 889 P.2d 1276, 1278.

¶ 16 *Furr* essentially held that personal comfort missions (e.g. using restroom facilities), **during working hours on employer's premises**, are generally considered in the course of employment and when an injury occurs while engaged in such activity it may also be appropriate to view the injury as having arisen out of employment. *Furr* merely applied the well-understood principle that work-connected activity reaches beyond direct services performed and includes ministrations to the personal comfort and needs of employees, **while at work**, and that such activities are necessary incidents of the employment. *Richey v. Commander Mills, Inc.*, 1974 OK 47, 521 P.2d 805, 807.

¶ 17 In the first instance, neither claimant, nor the COCA, have cited any authority for the proposition that the cab of the truck may be considered the premises of the employer for analysis of the pertinent issues in this case. Neither has our research revealed any Oklahoma case which supports such an analysis. The tractor/cab, off the step(s) of which claimant fell, is a vehicle that at the time of the accident was under claimant's control. Under the circumstances of this case, we fail to perceive any rationale that would properly conceive of the cab as the employer's premises.

¶ 18 Second, this Court has decided numerous cases where an employee is injured in association with the use of an employer's vehicle, but never have we grounded our analysis of whether workers' compensation coverage existed on a determination that an employer-owned vehicle is to be looked at as the employer's premises. *See e. g. Nineteenth Seed Co. v. Townsend, supra; Dobson v. Commercial Oil Transport, Inc.*, 1962 OK 109, 371 P.2d 709; *Mansfield v. Industrial Service Co.*, 203 Okla. 384, 222 P.2d 373 (1950). In truth, although the fact an accident occurs in association with a company-owned vehicle might be a relevant factor as to whether an injury did or did not arise out of and in the course of employment, even accidents involving an employee's own vehicle will fall within the Act's coverage if a claimant is actually doing something at the direction of his employer at the moment of injury or he is compensated for travel to and from the work site and the injury occurs during such compensated travel time period. *See e. g. Hughes v. Haco Drilling Co.*, 1959 OK 52, 340 P.2d 472 (coverage where employee killed while transporting in his automobile water container owned by employer who furnished and paid for ice, and directed specific handling of water can for drilling crew) and *Charles H. Stanford, Inc. v. Gregory*, 1956 OK 293, 303 P.2d 1112 (coverage where employee paid wages for time spent traveling to and from work site in his own vehicle and injury occurs during such compensated travel time). Furthermore, even an activity or task performed at an employee's own residence may be considered compensable if it is being carried out under instruction(s) or direction from the employer. *Moore v. City of Norman*, 1999 OK 39, 983 P.2d 436.

¶ 19 Rather than viewing the situation involved here as an on-premises event, in our view, appropriate factors to consider are: when did the accident occur in relation to claimant's work-schedule [*Mansfield v. Industrial Service Co., supra*] and was the claimant doing something at the time of the accident at the direction of the employer or in furtherance of employer's business. *Dobson v. Commercial Oil Transport, Inc., supra; See also Commercial Cas. Ins. Co. v. Ables*, 199 Okla. 288, 185 P.2d 907 (1947). We believe it is also appropriate to consider whether transportation to or from work was provided by employer as an incident of the employment, as where there is an agreement—express or implied—for the employer to furnish transportation [*McGeorge Corp. v. State Indus. Com'n*, 180 Okla. 346, 69 P.2d 320, 321 *First Syllabus* (1937)], as opposed to the employer providing transportation merely as an accommodation or act of courtesy to its employee. *Nineteenth Seed Co. v. Townsend, supra.* Another relevant consideration would be what benefit, if any, employer received by allowing claimant to keep the tractor at his residence in between his over-the-road trips, rather than parking it at employer's terminal during such interludes. When one considers such factors, it is easily seen the decision to deny coverage here is supported by competent evidence.

¶ 20 In *Mansfield v. Industrial Service Co., supra,* benefits were denied to a worker on the basis that injuries suffered in a vehicular accident involving a company truck did not arise out of and in the course of the claimant's employment. This Court sustained the denial of benefits when the record contained evidence the accident occurred while the worker was on vacation and he was under no employer-directed obligation to perform any work-related duties during the vacation period. In the present case, the accident also occurred while claimant was on vacation and there is no evidence he was under any direction from employer to perform any work-related activity during such time.

¶ 21 Further, the record here plainly does not command a finding that traveling with the refrigerator was necessitated by any employer-created or directed requirement or condition of claimant's employment as a truck driver. Neither does it command a finding that while loading the refrigerator during his vacation he was engaged in an activity incidental to some employment related duty. In relation to loading the refrigerator into the cab, claimant expressly admitted the employer had not told him to bring the refrigerator on his trips—i.e. whether or not to bring it was a matter of his personal choice and it was for his own personal convenience. The express evidence, through claimant's own testimony, is that the refrigerator was brought on claimant's over-the-road trips for his own economic benefit, i.e. the personal cost savings to him on said trips.

¶ 22 Although claimant makes the argument employer benefitted from his use of the refrigerator because his trips could be accomplished in a lesser period of time—i.e. his testimony that it took him 15–20 minutes to eat when stopping at the side of the road or at a rest area, and it would take him an hour to an hour and a half to stop at a regular truck stop restaurant—the record here is not at all clear how this actually provided any direct or indirect benefit to employer. Claimant was paid mileage, not via any time interval. In that he was paid by the distance traveled, an inference arises that any time saved by use of the refrigerator benefitted him exclusively by making the period of time he had to work for the same pay that much shorter. The record simply does not substantiate what benefits flowed to employer from the suggested time-savings.

¶ 23 As noted previously, there is no direct evidence that claimant's use of the refrigerator, rather than patronizing commercial eating establishments, in any manner lessened the mileage traveled between his destinations so that employer would be liable for less pay to him for any of his over-the-road trips. There is also no direct evidence that any time-savings which might have inured by use of the refrigerator enhanced employer's relationship with any of its customers. Instead, the evidence here, as candidly admitted by claimant and as already set out above, supports a determination the refrigerator was for his own economic benefit, i.e. it was cheaper for claimant to bring his own food rather than frequent commercial eateries on his trips.

▮ ¶ 24 There is also no requirement, based on the evidence in this record, for a finding the presence of the tractor at claimant's home during his vacation benefitted the employer in any way or that allowing him to drive it to and from the terminal and his home, constituted some type of agreement on employer's part to provide him with transportation to and from the terminal, **as an incident of the employment**. When transportation to and from work is provided as an incident of the employment for the mutual benefit of employer and employee in order to facilitate the progress of the work, an injury sustained on the way to and from work may be held compensable. *Mark the Mover v. Lancaster,* 234 Ga.App. 319, 506 S.E.2d 673, 674 (Ga.App.1998); *See Christian v. Nicor Drilling Co.,* 1982 OK 76, 653 P.2d 185, 186. When the transportation is provided merely as an accommodation or act of courtesy on the employer's part, however, compensability is not required. *Nineteenth Seed Co. v. Townsend, supra.*

¶ 25 As noted in **PART II, FACTS AND PROCEDURAL BACKGROUND,** this record contains no evidence mandating a finding claimant was paid mileage for the distance

traveled in driving the cab from his home to the employer's premises where he would pick up—i.e. hook it up to—a trailer. There is also no evidence he was paid anything by employer to keep the cab at his home or that he was in any manner reimbursed for doing so. Also, the record contains no explanation as to why he was allowed to keep the cab at his home during his vacation or what benefit, if any, employer gained thereby. Simply, the evidence in this record is consistent with a determination he was allowed to keep the cab at his home and drive it to and from the terminal merely as an accommodation or act of courtesy on employer's part, and this record requires no other determination.[5]

¶ 26 The COCA also believed a rationale akin to the special task exception to the going and coming rule could appropriately be applied in this situation. It is difficult to understand the position of the COCA in such regard given the evidentiary record in this case. As noted earlier, the general rule is that an injury suffered by an employee while on the way to or from his/her regular work is not compensable. *Harris v. La Quinta*, 1997 OK 50, 937 P.2d 89, 90. One recognized exception to the rule is when the accidental injury is sustained while the employee is going to perform, or leaving after performing, a special task, outside the worker's regular hours and at the employer's request. *Id.* This Court has also recognized the principle that the urgency or immediacy of making a journey at the employer's request, and for its benefit, may be sufficient to bring an accidental injury incurred while traveling to or from work into the sphere of compensability. *Stroud Municipal Hospital v. Mooney*, 1996 OK 127, 933 P.2d 872.

¶ 27 Although claimant and the COCA appear to view the record as unequivocally showing claimant was somehow informed by employer that he was to be at employer's terminal "early" on April 1st for departure on his next over-the-road or long-haul assignment, no evidence we have reviewed supports such a characterization of claimant's testimony, and certainly, no evidence that would mandate such a characterization. What claimant testified was, he talked with a company dispatcher, apparently the day before the accident, who told him he would be beginning a trip on the 1st and he was to report to the terminal at 7:30 a. m. As noted in **PART II, FACTS AND PROCEDURAL BACKGROUND**, no direct evidence is contained in the record that 7:30 a.m. was somehow an unusual time for claimant to begin an over-the-road trip, or that it was an earlier than normal time to report to the terminal when a trailer was required to be hooked up to the tractor/cab there prior to commencement of an over-the-road trip. Furthermore, according to claimant's own testimony, the reason he put the refrigerator into the cab the night before he was to leave on an over-the-road trip was because it took a number of hours to get cold, something that would obviously inure to his benefit not employer's. Very simply, we fail to see how the situation here can be deemed akin to the special task exception to the going and coming rule or how the rationale of that exception can be applied to this case.

## PART IV. CONCLUSION.

¶ 28 Competent evidence is contained in this record to support a determination claimant was injured at his home during a vacation while loading into employer's tractor his own personal refrigerator. There is also competent evidence to show that claimant was not performing any work-related mission for the employer or engaged in an activity incidental to some employment related duty at the time he was loading the refrigerator.

5. The COCA's reliance on *F.W.A. Drilling Co. v. Ulery*, 1973 OK 82, 512 P.2d 192 to support its decision to vacate the three-judge panel's decision is misplaced for three main reasons. One, the facts there plainly showed employer agreed to provide its employees with transportation to the drill site as an incident of the employment. Two, the accident occurred immediately prior to the trip to the drill site, rather than as here where the accident occurred during claimant's vacation. Three, the worker injured in *Ulery* had no choice but to bring his own lunch to the drill site because no other food was available at the work site. Further, in that claimant's fall did not occur while loading the clothing or bedding to be used by him on his over-the-road trip we need not decide whether an injury incurred while loading such materials would produce a different result in this case.

Instead, competent evidence shows the refrigerator was used by claimant on his over-the-road trips as a truck driver by his own choice, for his own personal convenience and for his own economic benefit, i.e. to save him money. In view of the state of this record, it cannot be said the trial judge erred in denying workers' compensation benefits based on finding claimant's accidental back injury did not arise out of or in the course of his employment, or that the three-judge panel mistakenly affirmed the denial of benefits. The decision of the COCA, therefore, to vacate the panel's affirmance on the basis, as a matter of law, that the accidental injury was compensable because it did arise out of and in the course of employment, was erroneous.

¶ 29 Accordingly, the Court of Civil Appeals' Memorandum Opinion is **VACATED** and the decision of the Oklahoma Workers' Compensation Court three-judge panel is **SUSTAINED**.

¶ 30 ALL JUSTICES CONCUR.

