2007 OK CIV APP 96

**Brenda Kathleen DEISE, Petitioner,**

v.

**MASTERCUTS/REGIS CORP., The Hartford Insurance Co. of the Midwest, and The Workers' Compensation Court, Respondents.**

No. 104,306.

Court of Civil Appeals of Oklahoma, Division No. 1.

June 28, 2007.

Certiorari Denied Sept. 24, 2007.

Laura Beth Murphy, Murphy & Murphy Attorneys, Oklahoma City, Oklahoma, for Petitioner.

Brian E. McMahan, McClure Law Office, Oklahoma City, Oklahoma, for Respondents Mastercuts/Regis Corp. and The Hartford Insurance Co. of the Midwest.

KENNETH L. BUETTNER, Judge.

¶1 Petitioner Brenda Kathleen Deise seeks review of an Order of a three-judge panel of the Workers' Compensation Court which vacated the trial court's finding that Deise's claimed injury was compensable. Deise sought compensation for injuries resulting from an automobile accident which occurred after she made a bank deposit for Respondent Mastercuts/Regis Corp. (Employer). The parties disputed whether Deise was on a special mission at the time of the injury. The panel's Order is supported by competent evidence and we sustain.

¶2 Deise filed her Form 3 February 17, 2006, in which she claimed a single incident accidental injury, occurring October 6, 2005, to the right leg and foot and consequential depression, arising out of and in the course of her employment. Employer filed its Form 10, May 22, 2006, in which it denied Deise's injury arose out of and in the course of employment.

¶3 Trial was held August 14, 2006, and the trial court issued its Order Awarding (TTD) Benefits August 16, 2006. The trial court found Deise sustained an accidental injury to the right hand, right leg, right foot (below the knee amputation) with consequential psychological overlay arising out of and in the course of employment. The trial court denied Deise's claim for a consequential injury to the back. The trial court expressly found that Deise was on a special mission for Employer at the time of the accident, and that Deise's "work activities constitute the major cause of her resulting injuries." The trial court awarded TTD, medical treatment, and prosthesis. The trial court reserved for future hearing the award of PPD and the determination of any deficiency due from Employer following settlement of Deise's third-party claim.

¶4 Employer appealed the trial court's Order to a three-judge panel, claiming that the finding that Deise was on a special mission was against the clear weight of the evidence and was contrary to law. Employer asserted that at the time of her injury, Deise had left her employment and was on a per-

sonal mission. The panel vacated the trial court's Order, finding that Deise was "not on a special mission, but rather was performing her regular job duties prior to her injury, . . . ." The panel found Deise's injury was not compensable pursuant to *Harris v. La-Quinta*, 1997 OK 50, 937 P.2d 89.

¶5 In this review proceeding, Deise claims that the facts are undisputed and that the panel erred as a matter of law in finding that she was not on either a special mission or that she was driving her car as a job requirement at the time of the injury. Deise claims that either circumstance requires a finding of compensability. Employer claims Deise's testimony was contradictory and that the panel's finding is supported by competent evidence. Employer asserts Deise's trip to the bank was a routine job assignment and that it therefore did not qualify as a special mission. Employer argues that after making the deposit, Deise's job duties had ended and she was making her way home at the time of the injury. Employer argues therefore that Deise's claim is not compensable according to the going and coming rule.

¶6 Deise was the only witness at trial. Deise testified that she worked for Employer as a hairdresser at Employer's Shawnee Mall location. She had been employed there just under a year at the time of the injury. Deise explained the job duty that led her to make a bank deposit before this injury:

> We took turns on the schedule to come in two days a week and leave late two days a week, closing the shop.[1] Two people would count the drawer and the money and make sure everything matched for the night, make the bank deposit.
>
> And whoever did the counting of the money left the bag with the other person, and two people followed each other to the bank and made the drop.

Deise explained that she was paid for her time involved in going to the bank. She explained that on the days she made the deposit she was paid for 15 minutes beyond the time she clocked out.

¶7 Deise testified that Employer's door at Shawnee Mall is located a quarter-mile east

---

1. Deise later testified that she made the bank deposit "approximately once a week."

of the intersection of I–40 and Harrison. Deise lives in Seminole, and she explained that her normal route home from work is to get on I–40 at Harrison, next to the mall, and go east to Highway 3 where she turns south towards Seminole. Employer directed employees making the bank deposit to go south on Harrison from the mall to the Arvest Bank without making any stops. Deise testified Employer requires two drivers to make sure the deposit is safely made. Both drivers are paid for the extra 15 minutes.

¶ 8 Deise testified that on October 6, 2005 she was scheduled to close and make the deposit. She counted the money and he co-worker carried the money to the bank. "My job was to follow her to the bank until the bank deposit was made and then go our separate ways." Deise followed her co-worker to the bank and after they dropped the deposit, Deise testified that she did not return north on Harrison to I–40. Instead, she proceeded south on Harrison with the intent to purchase gasoline and then meet Highway 3 at a point further south. After leaving the bank, Deise traveled south on Harrison for about a quarter of a mile when a pickup drove out of a sports bar parking lot and hit Deise's car head on. The accident resulted in the loss of Deise's leg; she also suffered a broken left toe, a broken right hand, and seven fractured ribs. Deise testified the prosthetic leg has caused her to walk differently, which led to back problems. Deise testified she also lost her home, car, and job.

¶ 9 Deise testified she was on Harrison at the time of the accident at Employer's direction. She asserted that if she had been allowed to stop to get gas before going to the bank, she would have purchased gas at a station next to the mall and would not have gone south on Harrison from the bank to get gas, and at the time of the accident she would have been driving on I–40 towards home. Deise testified that according to the accident report, the collision occurred at 9:23 and that she therefore was still on the clock for work.

¶ 10 On cross-examination, Deise explained that the two employees do not exit their cars at the bank. The one carrying the deposit drops the money into the night deposit box. Deise agreed that once the money is dropped at the bank, the two co-workers are free to go in any direction they want. Deise agreed that on the day of the accident, she clocked in at 1:35 p.m. and clocked out at 9:14 p.m.[2] Deise agreed the bank deposit was the "last job-related duty you've go to do." Deise testified that normally if it was her day to make the deposit, she would leave the bank and go north on Harrison to get back to I–40 for her trip home. On the day of the accident, she went south on Harrison because she needed to get gas for her car. Deise also agreed there is a gas station between the bank and I–40 that is closer to the bank than the gas station she was driving to at the time of the accident.

¶ 11 We will affirm the panel's decision if it is supported by any competent evidence. *Owings v. Pool Well Service*, 1992 OK 159, ¶ 1, 843 P.2d 380; *Parks v. Norman Mun. Hosp.*, 1984 OK 53, ¶ 2, 684 P.2d 548. The applicability of the special task exception is ordinarily a question of fact; however, where the facts necessary to establish the special task exception are undisputed, a question of law is presented. *Lucas v. Triad Drilling Company*, 1998 OK 98, 969 P.2d 363. Deise asserts the facts are undisputed and that therefore the issue is one of law—whether the undisputed facts here show a compensable injury. Employer asserts that inconsistencies in Deise's testimony show factual discrepancies so that we must review the record for competent evidence. We find different inferences may be drawn from Deise's testimony. "Only where there is no conflict in the evidence, and no opposite inferences may be drawn from undisputed proof, is it proper to treat such matters as questions of law. . . . Whenever conflicting/inconsistent inferences may be drawn from undisputed facts, the issue is one of fact, not one of law." *Barnhill v. Smithway Motor Express*, 1999 OK 82, 991 P.2d 527, 529–530.

2. Employer asked Deise if the extra time was "already figured in" and she said yes. It is unclear from Deise's cross-examination testimony if she actually clocked out at 8:59 or whether she actually clocked out at 9:14. On re-direct, Deise clarified that she actually clocked out at 9:14 and the secondary time slip would have paid her for 15 minutes after that, to 9:29.

¶ 12 In her appellate brief in chief, Deise argues that the undisputed evidence shows she was on a special mission. Employer counters that Deise's trip to the bank did not qualify as a special mission. In her reply brief, Deise asserts that she was driving at Employer's direction at the time she was injured and that the injury is compensable whether it's characterized as a special mission, a normal job duty, or a dual mission.

■ ¶ 13 It is without question that typically injuries incurred while going to or coming from work are not compensable. *Lucas, supra,* at ¶ 11. However, that rule "does not apply where the employee sustains an accidental injury while going to or returning from his place of work to perform a special task outside of his regular hours at the request of his employer and for the employer's benefit." *Id.,* citing *Thurston Chemical Company v. Casteel,* 1955 OK 104, 285 P.2d 403. Oklahoma decisions have found several exceptions to the going and coming rule: 1) where the employer has agreed, as an incident to employment, to furnish transportation to and from work; 2) where an employee is charged with a work-connected duty or task while traveling to and from work, *R.J. Allison, Inc., v. Boling,* 1943 OK 43, 134 P.2d 980, 192 Okl. 213; 3) where ingress and egress to premises has been constructed by the employer, or is the only means provided, *Swanson v. General Paint Co.,* 1961 OK 70, 361 P.2d 842; and 4) where the work creates necessity for travel. *Chas. H. Sanford, Inc. v. Gregory,* 1956 OK 293, 303 P.2d 1112.[3]

¶ 14 In reasoning that Deise was not on a special mission, Employer has focused on cases showing a special mission to include

some sense of urgency. Employer argues that because the trip to the bank was a once or twice weekly part of Deise's job duties, that there was nothing special about the bank deposit trip. However, *Impson v. Dillard's Brown–Dunkin Company,* 1971 OK 93, 489 P.2d 483, shows that urgency is not a necessary component of a special task. In that case, all of the department store's employees were expected to work on "inventory Sundays" twice a year. The employees' normal workdays were Monday through Saturday, but twice a year they were expected to come to work on a Sunday to conduct inventory. The claimant was injured in a car wreck on her way to the store on an inventory Sunday. In finding the injury compensable, the Oklahoma Supreme Court held:

> Claimant at the time she was injured was on her way to perform a special task for respondent. She was to assist in making an inventory of respondent's store, which was done twice each year. Claimant was a saleslady and the taking of an inventory was a special task outside of her regular duties. The special task was to be performed on Sunday outside of her regular hours of employment as a saleslady during week days.

*Id.* at ¶ 12. In *Harris v. La Quinta, Lumberman's Mutual Insurance,* 1997 OK 50, 937 P.2d 89, the Oklahoma Supreme Court cited *Impson* but still found that some urgency was required to show a special task or mission.

¶ 15 The *Harris* decision noted another element to a finding of a special task: a special task is one in which an employee is

**3.** 99 C.J.S. Workers' Compensation § 431 provides, in part:

Exceptions to the general rule that injuries sustained while traveling to and from work are not compensable under the workers' compensation act have been variously grouped to include situations where an employer provides the means of transportation or pays travel time; where the employee performs duties during the commute; where the way is inherently dangerous; where the place of the occurrence of the injury is in such close proximity to the workplace that it is brought within the scope of employment, and where the injury occurs while the employee is on a special errand for the employer.

Another formulation of the exceptions to the general rule includes the following exceptions: where transportation is furnished by the employer to benefit the employer; where the employer requires the employee to use a vehicle as an instrumentality of the business; where the employee is injured while upon a special errand or special mission for the employer; where ingress and egress at the place of employment are inherently dangerous; and where the employee combined pleasure and business on trip, and business part predominated. (Footnotes omitted).

asked to do work different from his ordinary work duties. Deise argues that because she was employed as a hairdresser, the making of a bank deposit was different from her ordinary duties. However, Deise's testimony revealed that she had been making the bank deposit once or twice a week since she began working for Employer. The once or twice weekly bank deposit was a regular duty in this case.

¶ 16 Employer relies also on *Schell v. Blue Bell,. Inc.,* 1981 OK CIV APP 73, 637 P.2d 914, which includes the following instructive analysis:

> Whether decedent's particular activities in the context of this case are encompassed within the special errand or special task exception to the going and coming rule likewise presents a question of fact for the trial judge. *Northwestern Steel and Wire Co. v. Industrial Commission,* 38 Ill.2d 441, 232 N.E.2d 293 (1967); *California Cas. Indemnity Exch. v. Industrial Acc. Com'n.,* 21 Cal.2d 751, 135 P.2d 158 (1943). Merely going to work outside his regular hours does not bring the employee within the special task exception. *Janger Produce Company v. Lee,* 304 P.2d 285 (Okl. 1956).

In 1 Larson, Workmen's Compensation, § 16.10, the special errand or special task rule was stated as follows:

> "When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself."

In determining whether the special task exception is applicable, courts consider certain factors, including the nature of the task, errand, or service and the nature of the journey. 1 Larson, Workmen's Compensation, §§ 6.10–16.12.

The nature of the errand or task is important. Was it really a special task or merely a normal incident of the job that the employee was hired to perform? In considering the nature of the journey the court will consider the regularity or usualness of the journey and the onerousness of the journey-the length traveled, the suddenness or urgency of the request, the inconvenience, and the hazards incident thereto. Did the trip involve a special or extraordinary trip not normally incident to the employment?

\* \* \*

> It was a question of fact for the trial judge whether decedent's activities were sufficient to bring him within the special task exception to the going and coming rule. . . ..

¶ 17 Deise distinguishes *Schell* because in that case, the claimant was not directed by his employer to drive outside of the workplace. In *Schell,* the claimant simply worked an extra day that he normally would be off of work, and he was fatally injured in a collision on his way home.

¶ 18 The New Mexico Supreme Court has cited the following passage from Larson:

> I Larson, Workmen's Compensation Law, 253, 266–68, 275, states that the basic principle or premise underlying the 'exceptions' to the going and coming rule and the clue to their proper limits is found in the principle that the injury is compensable only where the journey is an inherent part of the service for which the employee is compensated or where the travel itself is a substantial part of the service performed.

*Rinehart v. Mossman–Gladden, Inc.,* 77 N.M. 470, 423 P.2d 991, 992 (N.M.1967). In *Hughes v. Haco Drilling Co.,* 1959 OK 52, 340 P.2d 472, the employee was killed in a traffic accident while driving his own car to work, but while carrying a water container furnished by the employer and while following specific direction from the employer to take the water container to the job site. The Oklahoma Supreme Court found that the death was compensable as an exception to the going and coming rule because the employee was acting at the direction of the employer at the time of the injury.

¶ 19 The Oklahoma Supreme Court has noted two key factors in such cases: "when did the accident occur in relation to claimant's work-schedule and was the claimant doing something at the time of the accident at the direction of the employer or in furtherance of employer's business ... and what benefit, if any, employer received by" the trip. *Barnhill, supra,* at ¶ 19.

■ ¶ 20 In this case, competent evidence supports the finding that at the time of Deise's injury, her work duties were finished and as she testified, she and her co-worker were free "to go (their) separate ways." If Deise had been injured during her drive from Employer's premises to the bank, the injury would have been compensable because she was then doing Employer's business. But, Employer's control over Deise's travel ended at the time she left the bank parking lot. Competent evidence supports the finding that at the time of the injury, Deise was going home from work, after concluding her duties for Employer, and the injury was therefore not compensable.

¶ 21 Deise argues that under the exceptions to the going and coming rule, a claimant is covered until she arrives home. However, under that reasoning, Deise could have taken a side trip to Dallas and still claimed to be covered. In support of this claim, Deise relies on the following language:

> An exception to the aforesaid general rule is found in cases where it is shown that the employee, although not at his regular place of employment, even before or after customary working hours, is doing, is on his way home after performing, or on the way from his home to perform, some special service or errand or the discharge of some duty incidental to the nature of his employment in the interest of, or under direction of, his employer. In such cases, an injury arising enroute from the home to the place where the work is performed, or from the place of performance of the work to the home, is considered as arising out of and in the course of the employment.

*Anderson Const. Co. v. Franklin,* 1957 OK 196, 315 P.2d 785, quoting *Bocock v. State Board of Education,* 55 Idaho 18, 37 P.2d 232, 234 (1934). However, in *Anderson,* and other cases where an injury on the way home has been found compensable, the employee was called from home to report to work on an emergency basis. In that circumstance, the employee can claim to be on the roadway expressly due to the employer's request. In this case, Deise was not called out from home specially. Instead, after Deise finished her routine weekly trip to the bank, her job duties ended and she was free to travel in any direction.

¶ 22 Deise testified she was on her way to purchase gasoline at the time of the accident. That was a personal mission or errand undertaken after she had finished her work duties. Although Deise claims that her trip to get gasoline was required because Employer's directions did not allow her to stop for gas between the mall and the bank, the evidence was that the trip to the bank took at most 15 minutes. Deise does not claim the trip to the bank caused her to expend a great deal of gasoline. Employer is not liable for an injury received during a personal mission simply because Deise arrived at work with a low tank of gas that day.

¶ 23 Here the trial court found Deise was on a special mission at the time of the injury. Deise argues in her Reply Brief that she was at the place of the accident because of Employer's direction, whether her trip is labeled a special mission or a dual purpose trip. Several cases have linked these exceptions to the going and coming rule. Because we sustain the panel's Order, we do not determine whether dual purpose is a claim sufficiently distinct from special mission that Deise could not raise it for the first time in her Reply Brief. We note the following test for dual purpose trips has been adopted in Oklahoma: "if the work of the employee created the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own.... If, however, the work has no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand remained undone, the travel is then personal, and personal the risk." *Pepco, Inc. v. Ferguson,* 734

P.2d 1321, 1987 OK CIV APP 15, citing *In the Matter of Marks v. Gray,* 251 N.Y. 90, 167 N.E. 181, 182 (N.Y.1929). In this case, Deise's work created the necessity for travel to the bank. Deise's trip to purchase gasoline on her way home from work would have occurred whether her work day ended at the mall or at the bank. Competent evidence supports the finding that Deise's work-required travel had ended when she left the bank and was free to go wherever she chose. Competent evidence therefore supports the panel's Order that Deise's injury was not compensable. SUSTAINED.

HANSEN, P.J., and BELL, J., concur.