2002 OK 58

**Linley Lynae FLOYD, Petitioner,**

v.

**TACO MAYO/ACCORD HUMAN RESOURCES, Credit General Guaranty Fund, and The Workers' Compensation Court, Respondents.**

**No. 96,723.**

Supreme Court of Oklahoma.

June 25, 2002.

Rehearing Denied Nov. 19, 2002.

Michael E. Utter, Oklahoma City, OK, for Petitioner.

H.A. Carter III, Oklahoma City, OK, for Respondents.

## OPINION

WATT, Vice Chief Justice.

### FACTS AND PROCEDURAL BACKGROUND

¶1 Respondent, Accord Human Resources, owns and operates a Taco Mayo restaurant in Tecumseh, Oklahoma. The restaurant is managed by Pat McConnell, who co-owns it with his father, Phil McConnell. Petitioner, Linley Lynae Floyd, is Pat McConnell's sister and Phil McConnell's daughter. Floyd worked part time for the McConnells in their restaurant and the McConnells allowed Floyd to eat free meals there at any time. The McConnells also provided meals for their other employees at half price, provided the meals were eaten within thirty minutes before their shifts began or thirty minutes after they ended.

¶2 Floyd had a full time day job in an insurance business but also worked at the Taco Mayo as a part time employee. Although she was not scheduled to work on the day she was injured, Floyd went to the restaurant to eat at about 6:00 p.m. that day, May 6, 1999. When she arrived, her brother asked her if she could work because they were busy. Floyd agreed and worked from 6:00 p.m. until 9:00 p.m., at which time she

signed out on a time sheet form used by the restaurant to account for its employees' time.

¶ 3 Floyd testified that she was free to leave the restaurant after her shift but that she chose to stay and eat. As she was completing her meal at about 9:15 or 9:20 p.m., Floyd went to the self-serve drink machine to refill her drink. She slipped on a wet place on the floor, fell and injured her left knee. The dining room was closed at 9:00 p.m. and there were apparently no customers there when Floyd fell. Sometime after 9:00 p.m. another restaurant employee had apparently removed a mat from in front of the drink machine while cleaning the restaurant's floor.

¶ 4 After Floyd fell, her brother called an ambulance and she was taken to a Shawnee hospital for treatment. Floyd was treated and released, returned to work within a few days, and later took a full time job at the restaurant. Floyd did not initially file a claim in the Workers' Compensation Court. Instead, she filed a common law negligence claim against the restaurant under its liability policy. Floyd was paid $1,000.00 in medical pay by the restaurant's insurance carrier as a result of her claim. On October 2, 1999, while she was working for the restaurant on a full time basis, Floyd had another accident and re-injured her left knee, which injury was followed by arthroscopic surgery on October 25, 1999. Floyd filed a Form 3, Employee's First Notice of Accidental Injury and Claim for Compensation, for the injury at issue here on January 24, 2001 and filed another Form 3, apparently at or near the same time, for the later October 2, 1999 injury.

¶ 5 Respondents claim and Floyd does not deny that Floyd's knee surgery was paid for by compensation benefits flowing from her claim for compensation from her second knee injury of October 2. Floyd resigned from her job in her family's restaurant sometime after her October 2 injury and before she filed her claims for compensation under circumstances that her brother described as having generated "ill will or problems."

¶ 6 In its order the Workers' Compensation Court found:

—1.—

THAT at the time of the incident causing injury to the claimant's LEFT LEG (KNEE), she was "clocked out" and was performing personal activities (eating) which were not related to her work duties.

—2.—

THAT the claimant failed to establish that she sustained an accidental personal injury arising out of and in the course of her employment to her LEFT LEG (KNEE) on or about May 6, 1999.

Based on the foregoing findings, the trial court denied Floyd's claim for compensation.

## ISSUE

¶ 7 Does the record support the trial court's finding that Floyd was engaged in a personal task when she was injured and that her injury was, therefore, not compensable under the Workers' Compensation Act?

We hold that the record supports the trial court's conclusion that Floyd's activity, eating, at the time of her injury was "purely personal," under 85 O.S.2001 § 3(12)(a), and was, therefore, not compensable.

## DISCUSSION

¶ 8 Floyd relies on our opinion in *Turner v. B Sew Inn*, 2000 OK 97, 18 P.3d 1070, to support her contention that the trial court erred in finding that her injury was not compensable. In *Turner*, we held that claimant-employee, who worked in respondent-employer's retail sewing machine and sewing supply store, suffered a compensable injury. The plaintiff fell and injured herself in a shopping center parking lot while she was on her way to her job. The employer's store was in the shopping center and the employer asked its employees to arrive early enough to be available to greet customers when the store opened in the morning. The employer further told her employees to park in areas of the parking lot that were not near her store's front door because she wanted to reserve the near-by places for her customers.

¶ 9 In *Turner* we noted that the Workers' Compensation Act requires that in order to

be compensable an injury must be one "arising out of and in the course of employment." 85 O.S.2001 § 11(A). Although we held in *Turner* that plaintiff's injury was compensable, we did so because *"Nothing in the record establishes that her presence in the parking lot was in the furtherance of a personal purpose."* [Emphasis added.] *Turner,* 2000 OK 97 at ¶ 25, 18 P.3d 1070. Here, however, Floyd was admittedly eating when she fell and was injured. Our analysis of the Workers' Compensation Act and of our opinions construing it convinces us that when Floyd was injured she was not engaged in an activity "arising out of and in the course of employment."

¶ 10 In *Fox v. National Carrier,* 1985 OK 91, 709 P.2d 1050 this Court held that a truck driver had suffered a compensable injury when he choked on a piece of sausage and injured his neck in a restaurant where he had stopped to eat. The Court based its holding on its conclusion that stopping to eat was necessarily incidental to the work of a traveling employee. But in 1986 in an apparent expression of disagreement with the *Fox* opinion, the Legislature amended what is now 85 O.S.2002 § 3(12). In § 3(12) the legislature declared, "Only injuries having as their source a risk *not purely personal* but one that is causally connected with the conditions of employment shall be deemed to arise out of the employment." [Emphasis added.] At the same time the Legislature repealed 85 O.S.1991 § 27 (repealed, Laws 1986), which had created a presumption that an injury was compensable, which presumption could be overcome only if the employer produced "substantial evidence" to the contrary.

¶ 11 We considered the legislative change to the Workers' Compensation Act in *American Management Systems v. Burns,* 1995 OK 58, 903 P.2d 288. We expressly recognized that the legislative change "plainly contravenes this court's pronouncement in *Fox v. National Carrier.*" *Burns,* at ¶ 7. There, we concluded that the changes required the risk responsible for the injury to be causally connected with the employment.

¶ 12 We again examined the issue of what conduct is "purely personal" in *Corbett v. Express Personnel,* 1997 OK 40, 936 P.2d 932. There, the plaintiff-employee was injured when he collided with the fence surrounding his employer's parking lot as he was driving his motorcycle to his bank. After reviewing the legislative changes that followed *Fox,* we said, "Claimant's presence in the parking lot provided for employees does not *ipso facto* make his injury compensable." *Corbett,* at ¶ 9. We affirmed the Workers' Compensation Court based on its factual finding that the claimant was on a personal mission, noting that decisions of the Workers' Compensation Court "are conclusive and binding on appellate courts" and that such findings are "impervious to vacation." *Corbett* at ¶ 11.

¶ 13 Given the legislative changes that followed *Fox* and our responses to them the record support for the trial court's factual finding that Floyd's activity when she was injured was personal makes its conclusion that her injury was not compensable "impervious to vacation." *Corbett* at ¶ 11; *Parks v. Norman Municipal Hospital,* 1984 OK 53 ¶ 12, 684 P.2d 548, 552.

¶ 14 Floyd seeks to distinguish this case from *Burns, Corbett,* and *Parks* and place it within the ambit of *Turner* by arguing that her injury was work related because it occurred within the thirty minute period after her shift ended during which the restaurant furnished discounted meals to its employees. We find no analogy to *Turner* here, however. In *Turner* the plaintiff's employer required her to be in the shop and ready to greet customers when the doors opened. Thus, she had to be in the parking lot at a time earlier than the shop was scheduled to open in order to fulfil the requirements of her job. Here, however, the record reveals that Floyd was free to leave her employer's premises immediately after her shift ended and remained there only to eat the meal available to her should she decide to eat it. By staying in the restaurant in order to eat a free meal, Floyd was in no way carrying out a requirement of her job.

¶ 15 We reject the notion that the fringe benefit provided by Floyd's employer, a free meal, converted her personal decision to stay and eat that free meal into a duty of her employment or an incident to it, which would subject her employer to liability. We hold, therefore, that the trial court's order finding that at the time Floyd was injured she "was performing personal activities (eating) which

were not related to her work duties" is supported by the record and its conclusion that her injury was not compensable is supported by the law.

¶ 16 Finally, we note that the trial court's finding of fact that Floyd was performing a purely personal activity when she was injured is supported by competent evidence. Thus, that finding is "conclusive and binding" on this Court and not subject to reversal. *Corbett* at ¶ 11, *Parks* at ¶ 12. Consequently, we affirm the trial court's order denying Floyd's claim.

CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS' OPINION VACATED, ORDER OF WORKERS' COMPENSATION COURT AFFIRMED.

HARGRAVE, C.J., HODGES, OPALA, KAUGER, BOUDREAU, and WINCHESTER, JJ., concur.

LAVENDER and SUMMERS, JJ. dissent.