2006 OK CIV APP 96

**Lorri Michelle AUSTIN,**
**Claimant/Petitioner,**

v.

**AT & T WIRELESS SERVICES, INC.,**
Insurance Company of the State of Pennsylvania, and the Workers' Compensation Court, Respondents.

No. 102,112.

Court of Civil Appeals of Oklahoma, Division No. 3.

July 14, 2006.

As Corrected Sept. 21, 2006.

Brandon J. Burton, T.R. Banks, Burton & Associates, P.C., Oklahoma City, OK, for Claimant/Petitioner.

Tracy Pierce Nester, Gary D. Long, McGivern, Gilliard & Curthoys, Oklahoma City, OK, for Respondents, AT & T Wireless Services, Inc. and Insurance Company of the State of Pennsylvania.

Opinion by BAY MITCHELL, Presiding Judge.

¶1 Claimant/Petitioner Lorri Michelle Austin appeals an order of a three-judge panel of the Workers' Compensation Court vacating the trial court's ruling that Austin

sustained injuries arising out of and in the course of her employment when she slipped and fell in a parking lot. The issues before us are whether Austin's injuries occurred on the premises of Respondent AT & T Wireless Services, Inc., and whether they arose out of Austin's employment. We find the order of the three-judge panel is supported by competent evidence and sustain its decision denying compensability.

¶2 Upon arriving at her workplace on December 11, 2003, Petitioner Lorri Michelle Austin drove around the parking lot, first looking for a parking space in front of the entrance to AT & T and then in AT & T's southwest lot, both without success. Rather than drive to AT & T's north lot, which is up a hill, Austin parked her car in a space reserved for customers and employees of Jordan & Associates, a neighboring business.

¶3 After reporting to work that morning and attending a meeting, Austin was approached by a person she assumed to be an AT & T employee who told her to move her car because it was in a Jordan & Associates' space. Austin left AT & T's offices, went out into the parking lot, and discovered her car covered with stickers declaring the parking space was not AT & T parking and that her vehicle would be towed. Prior to moving her car, Austin decided to go to Jordan & Associates' offices to see if they had a scraper she could borrow in order to remove the stickers from her car. She testified she did not feel she could operate her vehicle safely without first removing the stickers. Austin knocked on three of Jordan & Associates' doors without answer. As she was approaching a fourth door, she slipped and fell, hurting her ankle, tail-bone, and back.

¶4 Able to walk, Austin headed back to AT & T. A security guard who had witnessed her fall on a video monitor met Austin halfway and instructed her to move her car. Without first removing the stickers, Austin safely drove her vehicle to an AT & T parking space. At the hospital where she was examined later that day, Austin filled out a questionnaire on which she reported having fallen in Jordan & Associates' parking lot.

¶5 Austin admitted that AT & T previously had instructed her regarding the areas of the parking lot in which she, as an AT & T employee, was allowed to park. She testified AT & T had posted maps on the front door of its offices designating permitted and prohibited parking areas. Austin further acknowledged receiving an e-mail from AT & T a few weeks prior to her accident informing employees of Jordan & Associates' on-going concerns over AT & T employee parking.

¶6 The trial court held Austin's injury arose out of and in the course of her employment with AT & T and awarded temporary total disability. AT & T appealed the ruling to a three-judge panel of the Workers' Compensation Court. In a split decision, the panel reversed and vacated the trial court's order, finding it contrary to law and against the clear weight of the evidence. The three-judge panel held that the area near the parking lot where Austin slipped and fell was not a part of AT & T's premises within the meaning of *Turner v. B Sew Inn*, 2000 OK 97, 18 P.3d 1070, and that Austin "was on a personal mission at the time of her injury that was wholly attributable to her decision to park in an area controlled by another entity, despite a specific prohibition by her own employer."

¶7 It is fundamental that, to be compensable under the Workers' Compensation Act, 85 O.S.2001 § 1, *et seq.*, an accidental injury must both arise out of, and occur in the course of, the worker's employment. *See Barnhill v. Smithway Motor Express*, 1999 OK 82, ¶2, 991 P.2d 527, 529; 85 O.S.2001 § 11(A). Accordingly, Austin must first prove her injuries occurred in the course of employment, which "relates to the time, place or circumstances under which the injury occurs." *Turner v. B Sew Inn*, 2000 OK 97, ¶14, 18 P.3d 1070, 1073. Second, Austin must show her injuries arose out of her employment, which requires her to establish "a causal connection between the act engaged in at the time the injury occurs and the requirements of employment." *Id.* Austin argues her injury is compensable because it occurred on premises owned and controlled by AT & T while she was moving her car pursuant to AT & T's direction.

¶ 8 In *Turner*, the Supreme Court held a sewing-shop employee suffered a compensable injury when she fell in the workplace parking lot while reporting to work. The sewing shop required its employees to arrive early enough to be available to greet customers when the store opened and to park their cars far enough away from the store entrance to leave the closest spaces open for customers. In reaching this decision, the Supreme Court first concluded the parking lot was part of the employer's premises, reasoning, "insofar as workers' compensation law is concerned, a parking lot constitutes an employer's premises when the employer's landlord furnishes it for the joint use of tenants and their employees, and its use is acquiesced in by the employer." *Id.* ¶¶ 10–11, 18 P.3d at 1072–73. The Supreme Court next ruled the employee's injury compensable because her presence in the parking lot was employment-related, and not in furtherance of a personal purpose. *Id.*, ¶ 25, 18 P.3d at 1076. The accident occurred while the employee was "rightfully on the premises" in the process of "crossing the parking lot to enter her workplace in a customary manner known to and acquiesced in by the employer." *Id.*

¶ 9 Here, there is competent evidence showing that the area of the parking lot where Austin parked her car the morning of her accident was not part of AT & T's premises. It was labeled as reserved for Jordan & Associates. In addition, far from acquiescing in its use by employees, AT & T specifically prohibited its workers from parking there. The actions of Jordan & Associates in marking Austin's car to be towed further indicates that portion of the lot was under the control of Jordan & Associates, not AT & T.

¶ 10 Even if we were to consider the portion of the parking lot where the injury occurred to form part of AT & T's premises, Austin's presence there "does not *ipso facto* make [her] injury compensable." *Corbett v. Express Personnel*, 1997 OK 40, ¶ 9, 936 P.2d 932, 934. "[O]nly injuries having as their source a risk not purely personal but one that is causally connected with the conditions of employment shall be deemed to arise out

of employment." 85 O.S. § 3(12)(a). Consequently, even when claimants are injured on their employers' premises, their injuries are not compensable if they were pursuing personal missions at the time, because the risk of causing the injury was not causally related to any employment duty. *Corbett*, ¶ 7, 936 P.2d at 934.

¶ 11 The employee in *Corbett* was in his employer's parking lot when injured, but was in the process of leaving on a personal banking errand when his motorcycle collided with the fence surrounding the lot. The Supreme Court affirmed the trial court's denial of compensation based on its factual finding that, despite being on the employer's premises, the employee was on a personal mission when injured. *Id.*, ¶ 11, 936 P.2d at 935; *see also Floyd v. Taco Mayo*, 2002 OK 58, 58 P.3d 197 (employee who was injured when she remained on the premises to eat free meal after clocking out was on a personal mission, and injury did not arise out of her employment); *Ogg v. Bill White Chevrolet Co.*, 1986 OK 26, 720 P.2d 324 (employee who was injured while going to his truck on employer's premises to get cigarettes was on a personal mission and injury did not arise out of his employment); *Thomas v. Keith Hensel Optical Labs*, 1982 OK 120, ¶ 2, 653 P.2d 201, 202 (claimant injured when he left early for lunch to remove the ice from his car was on a purely personal mission and his injury did not arise out of his employment); *White v. Milk Producers, Inc.*, 1972 OK 48, 496 P.2d 1172 (employee who fell on ice in employer's parking lot when she left work to help a car accident victim was on a personal mission, and her injury did not arise out of her employment); *Hegwood v. Pittman*, 1970 OK 91, 471 P.2d 888 (employee who left work to turn off her headlights was on a purely personal mission and her injury did not arise out of her employment).

¶ 12 Austin's claim that she was not on a personal mission because she was acting at the direction of AT & T to move her car is not persuasive. We fail to see how Austin was in any way carrying out requirements causally related to her job by parking illegally in the first place so as to avoid having to walk up a hill, or by searching for a scraper

from Jordan & Associates to scrape off the stickers they had placed on her car. Moving her vehicle to avoid having it towed was likewise a mission personal to Austin unconnected with her employment. The evidence certainly supports the conclusion that Austin was on a personal mission at the time of her injury, the result of her defiance of AT & T's rules.

¶ 13 Competent evidence exists to support the conclusion of the three-judge panel that Austin's injury is not compensable because it did not arise out of or in the course of her employment with AT & T.

¶ 14 SUSTAINED.

ADAMS, J., and BUETTNER, C.J., concur.