2008 OK 75

**K–MART CORPORATION and American Home Assurance, Petitioners,**

v.

**Mark HERRING and The Workers' Compensation Court, Respondents.**

No. 105,120.

Supreme Court of Oklahoma.

July 1, 2008.

Donald A. Bullard, Bullard & Associates, Oklahoma City, OK, for petitioners.

Phillip C. Hawkins, Hawkins Law Firm, Tulsa, OK, for respondents.

TAYLOR, J.

¶1 The question before this Court is whether the Workers' Compensation Court's finding that claimant's injuries occurred in the course of and arose out of his employment is supported by any competent evi-

dence. We answer that there is competent evidence in the record to support this finding.

## I. STANDARD OF REVIEW

¶ 2 We review the Worker's Compensation Court's resolutions of questions of fact under the standard of any competent evidence. *Barnhill v. Smithway Motor Express,* 1999 OK 82, ¶ 3, 991 P.2d 527, 529–530. Questions of law, which are reviewed *de novo,* arise if there are undisputed facts from which no conflicting inferences may be drawn. *Id.* If conflicting inferences can be drawn from undisputed facts, the issue is one of fact. *Id.* Here conflicting inferences can be drawn from the undisputed facts, making the issue one of fact and not of law. On questions of fact, the trial judge's finding may not be disturbed on review if supported by any competent evidence. *American Mgmt. Sys., Inc. v. Burns,* 1995 OK 58, ¶ 4, 903 P.2d 288, 290.

## II. FACTS

¶ 3 The claimant, Mark Herring, was the only witness who testified at the hearing. Herring worked as a stocker during the day-time hours for his employer, K–Mart Corporation. When he arrived at work on May 12, 2006, he noticed a request for someone to work from 11:00 p.m. that night until 6:00 a.m. the next morning. The work involved watching merchandise that K–Mart was going to leave outside for a sale. K–Mart and Herring agreed that Herring would watch the merchandise, and he arrived at the store about 10:45 p.m. to begin work. Herring testified that when he arrived, the night manager instructed him to go to the nearest convenience store if he "had any issues with anything, or needed anything."[1] Herring admitted that the night manager did not mention leaving his post to eat.

¶ 4 Herring clocked in at 11:00 p.m. and walked out of the store with the other employees. Herring sat in his vehicle in K–Mart's parking lot near the door. The store was then locked, and it is undisputed that Herring had no way to enter the store after 11:00 p.m.

¶ 5 About 3:15 a.m., Herring decided to go to the restroom. He went to the Fiesta Mart which was about a half of a block from the K–Mart store. When he arrived at the Fiesta Mart, he noticed that the lights on the gas pumps were off. Because he had a friend that worked at the Fiesta Mart, Herring believed that it would be closed for a short period of time while the clerk was on a restroom break or was restocking the cooler. Upon realizing that the Fiesta Mart was closed, Herring decided to get a burger. Herring drove to McDonald's about three blocks away.

¶ 6 When Herring pulled into McDonald's driveway, he noticed a man trying to open McDonald's door, but it was closed. Herring testified that he had planned to use the restroom and get food at McDonald's but because it was closed, he just went through the drive-through. When Herring got to the menu board, he turned and saw a man by his car. The man demanded Herring's car. When Herring put the car into first gear, the man shot Herring. The bullet entered Herring's left upper jaw, went through his tongue, and exited his lower jaw. Herring drove to another convenience store for help.

## III. PROCEDURAL HISTORY

¶ 7 On April 27, 2007, the trial judge entered an order denying compensation, finding Herring was on a special task and deviated from the task due to a personal mission. Herring sought review from a three-judge panel of the Workers' Compensation Court. By an order filed on July 24, 2007, the three-judge panel vacated the trial court's April 27th order and remanded "for a finding of a special task and a personal comfort mission thus a compensable injury occurring on May 13, 2006." On remand, the trial judge entered an order finding that Herring had suffered an accidental injury on May 13, 2006, arising out of and in the course of his employment. K–Mart and its insurer, Ameri-

---

1. Herring's testimony regarding the night manager's instruction is not entirely consistent. However, it is undisputed that the night manager told him to go to the nearest convenience store if he had any issues.

can Home Assurance, filed a petition for review with this Court.

¶ 8 Vacating the Workers's Compensation Court's order, the Court of Civil Appeals found: (1) the "special task" exception to the going and coming rule did not apply to the facts here because "Claimant was not injured while 'going to perform' or while 'leaving after performing' the special task," (2) the personal comfort mission rule did not apply because Herring was not on the employer's premises when the injury occurred, (3) Herring did not assert any valid exception to the going and coming rule, and (4) there was no competent evidence to support the trial court's finding that the injury occurred in the course of employment. Herring filed a petition for writ of certiorari which we granted.

## IV. GOVERNING LAW

¶ 9 A claimant seeking compensation has the burden of showing that the injuries for which benefits are sought both occurred "in the course" and "arose out of" the employment. *Corbett v. Express Pers.*, 1997 OK 40, ¶ 7, 936 P.2d 932, 934. Recovery is dependent on the claimant establishing these two distinct and separate requirements. *Id.* "In the course of" employment concerns the time or place of the injury's occurrence or the circumstances under which the injury occurred. *Fudge v. Univ. of Okla.*, 1983 OK 67, ¶ 4, 673 P.2d 149, 150. The "arising out of" component requires an evidentiary showing of a causal nexus between the injury and the risks of the employment. *Burns,* 1995 OK 58 at ¶ 5, 903 P.2d at 291.

¶ 10 In *Burns,* this Court addressed a 1986 amendment to section 3(7) of the Oklahoma Workers' Compensation Act (the Act), 85 O.S.Supp.1986, and the repeal of section 27 of the Act. Before the 1986 amendment, section 27 had provided in part: "In any proceeding for the enforcement of a claim for compensation under the Workers' Compensation Act, it shall be presumed in the absence of substantial evidence to the contrary: (1) That the claim comes within the provisions of the Workers' Compensation Act...." The 1986 amendment to section 3(7), codified in 2001 at section 3(12)(a) of title 85, added

language making compensable "only accidental injuries arising out of and in the course of employment.... Provided, only injuries having as their source a risk not purely personal but one that is reasonably connected with the conditions of employment shall be deemed to arise out of the employment."

¶ 11 In 2005, the Legislature enacted major changes in the Act which were in effect at the time of Herring's injury. 2005 Okla. Sess. Laws ch. 1, § 9 (1st Extraordinary Sess.). In 2005, section 3, subsection 12(a) of the Act was deleted and section 3, subsection 13(a) was added. Subsection 13a provides in part:

"Compensable injury" means any injury or occupational illness, causing internal or external harm to the body, which arises out of and in the course of employment if such employment was the major cause of the specific injury or illness. An injury, other than cumulative trauma, is compensable only if it is caused by a specific incident and is identifiable by time....

"Major cause" is defined as "the predominate cause of the resulting injury or illness." 85 O.S.Supp.2005, 3 (16). Section 3, subsection 13(a) is currently in effect and was in effect at the time of Herring's injury. *Whitehead v. Indep. Sch. Dist. No. 1 of Tulsa County,* 2003 OK 26, n. 2, 68 P.3d 978, 981 n. 2 (parties' rights determined by law in effect at the time of injury).

## V. ARGUMENTS

¶ 12 K–Mart and its insurer argue on appeal that there was no casual nexus between Herring's injuries and the risks of his employment, relying on *Burns,* 1995 OK 58, 903 P.2d 288, and *Superior Stucco v. Daniels,* 1995 OK 127, 912 P.2d 317. Relying on *Floyd v. Taco Mayo,* 2002 OK 58, 58 P.3d 197, they also argue that Herring's injury occurred while he was on a personal mission and, therefore, did not arise out of or in the course of his employment. Lastly, K–Mart and its insurer argue that the trial court erred in finding that Herring was on a special task, citing *Stroud Municipal Hospital v. Mooney,* 1996 OK 127, 933 P.2d 872, and *PESP/TSI v. Weese,* 2003 OK CIV APP 15,

64 P.3d 569, and on a personal comfort mission, citing *Ogg v. Bill White Chevrolet Co.,* 1986 OK 26, 720 P.2d 324.

¶ 13 In the brief before this Court, Herring asserts the trial court did not err in finding that his injuries were employment related and in finding that he was performing a special mission and was on a personal comfort mission at the time of his injury. Herring attempts to distinguish *Burns,* 1995 OK 58, 903 P.2d 288, stating that unlike the claimant in *Burns,* he, Herring, was on a special mission and but for his employment, he would not have been in the area of town where his injury occurred.

## VI. IN THE COURSE OF EMPLOYMENT

¶ 14 An injury is received in the course of employment if it occurs "within the period of employment at a place where the workman reasonably may be and while he is reasonably fulfilling a duty of his employment or engaged in doing something incidental thereto." *Barnhill,* 1999 OK 82 at ¶ 11, 991 P.2d at 531. To be in the course of employment an injury must "arise within time and space limitations of employment, and also within the course of activity related to employment." *Richey v. Commander Mills, Inc.,* 1974 OK 47, ¶ 6, 521 P.2d 805, 807. We discussed the personal comfort mission rule in *obiter dictum* in *Richey.* An employee is in the course of employment if carrying out the employer's purposes or advancing, either directly or indirectly, the employer's interest. *Id.* An employee's ministration to personal comfort and needs is an incident to the employment because it provides an indirect benefit to the employer. *Id.* This rationale is the basis of the personal comfort mission rule, which allows recovery for injuries incurred while an employee is ministering to his personal needs during the hours of employment. *Id.*

¶ 15 This Court applied the personal comfort rule in *City Bus Co. v. Lockhart,* 1951 OK 86, 229 P.2d 586. In *City Bus Co.,* a bus driver who was assigned to a shift of seven and one-half hours without a scheduled break or lunch period, parked the bus and crossed the street to get something to drink. The driver was returning to his bus when he slipped and fell in the street, breaking his leg. The employer allowed a practice and custom of drivers taking no more than five minutes for personal comfort breaks. This Court found support in the record for the trial court's finding that under the circumstances, the bus driver's "procurement of water and food [were] reasonably necessary to the health and comfort of [the] employee [and did] not break the continuity of employment, the employee remaining under wage while doing so." *Id.* ¶¶ 5, 14, 229 P.2d at 588–589.

¶ 16 In *Richey,* 1974 OK 47, 521 P.2d 805, the claimant was a machine operator in a garment factory. As her thirty-minute lunch period began, the claimant left her machine, slipped on garment clippings which were on the floor, and suffered an injury. This Court recognized that " 'acts as are necessary to the life, comfort, and convenience of the servant while at work' .... will be done in the course of employment is necessarily contemplated." *Id.* ¶ 9, 521 P.2d at 807 (quoting *Archibald v. Ott,* 77 W.Va. 448, 87 S.E. 791 (1916)). Reliance on the personal comfort rule was not necessary in *Richey* because the employee was on the employer's property and was leaving her immediate work area. *Id.* ¶ 13, 521 P.2d at 808.

¶ 17 K–Mart and its insurer attempt to distinguish *Richey* arguing Herring was not on K–Mart's premises when he was injured. Whether injury occurs on or off an employer's premises is not a controlling factor even though it is a consideration in whether the claimant was in the course of employment at the time of the injury. *Id.* ¶ 15, 521 P.2d at 808. Here, the fact that Herring was not on K–Mart's premises at the time of his injury is not fatal to his claim. It is undisputed that the K–Mart store was locked, and, therefore, any restrooms or food vending machines inside would not be available to Herring. In *City Bus Co.,* the bus driver was not on his employer's premises at the time of the injury but was in the street. Nonetheless, this Court affirmed the trial court's award of compensation.

¶ 18 K–Mart and its insurer also rely on *Ogg v. Bill White Chevrolet Co.*, 1986 OK 26, 720 P.2d 324. In *Ogg*, the claimant had left his office to get cigarettes from an employer-provided truck which was parked on the employer's premises when he fell and injured himself. In denying compensation, the trial court found that the injury did not arise out of or occur in the course of the employment. This Court sustained the trial court's finding "[t]he use of tobacco is not necessarily incidental to the requirements of the claimant's employment" and there was competent evidence in the record to support the trial judge's finding. *Id.* ¶ 6, 720 P.2d at 325–326.

¶ 19 We find that the facts here are most similar to those in *City Bus Co.*, 1951 OK 86, 229 P.2d 586. Herring was on a long shift without any scheduled restroom or lunch breaks. During a seven-hour shift, an employee can be expected to require a restroom and a food break. Herring had left his work station on a personal comfort mission. The conditions of Herring's employment necessitated him leaving the premises to minister to his personal needs. He was being paid at the time of his injury, and the trial court found he was in the course of his employment at the time of the injury.

¶ 20 K–Mart created the necessity of Herring having to leave the premises to use the restroom. It knew he would have to leave to attend his personal needs and instructed him to go the nearest convenience store if he had any issues. Since the nearest convenience store was closed, it is not unreasonable that Herring went to another location to take care of his personal comfort needs. Under the unique conditions of his employment, there is evidence in the record that Herring was in the time and space limitations of his employment and was in the course of an activity incident to his employment, *see Richey*, 1974 OK 47 at ¶ 6, 521 P.2d at 807, and we are bound by this finding under our standard of review. *Burns*, 1995 OK 58 at ¶ 4, 903 P.2d at 290. Because there is evidence in the record that Herring was on a personal comfort mission at the time of his injury, and, thus, in the course of his employment, we did not address whether he was going or coming to work as part of a special mission.

## V. ARISING OUT OF

¶ 21 An injury arises out of the employment when there is a causal connection between the condition under which the work is to be performed and the resulting injury. *Odyssey/Americare of Okla. v. Worden*, 1997 OK 136, ¶ 5, 948 P.2d 309, 311. The three categories of risks which an employee may encounter during the course of employment are those that are solely employment related, those that are purely personal, and those that are neutral. *Id.* ¶ 6, 948 P.2d at 311. Those that are solely employment related arise out of the employment and are compensable. *Id.* Those that are purely personal do not arise out of the employment and are not compensable. *Id.* Whether a neutral risk, which is one that is neither distinctly employment related nor purely personal, is compensable presents a question of fact. *Id.* Herring's risk of his injury here falls within the neutral-risk category.

¶ 22 Courts have used the positional risk test, the actual risk test, and the increased risk test to determine if a neutral risk-related injury arises out of the employment. *Id.*, 1997 OK 136 at ¶ 7–11, 948 P.2d at 311–312. The positional risk test states " '[a]n injury arises out of employment if it would not have occurred *but for* the fact that the conditions on the employment placed claimant in the position where he was injured.' " *Id.* ¶ 10, 948 P.2d 311 (quoting 1 Larson's Workers' Compensation Law § 6.50 (2005)). The actual risk test allows recovery when the employer subjects the worker to the very risk that injures him. *Id.* ¶ 9, 948 P.2d at 311. The increased risk test examines whether the employment exposed the claimant to a risk greater than that to which the general public was exposed. *Id.* ¶ 8, 948 P.2d at 311.

¶ 23 After the 1986 changes in the Act, the positional risk test is no longer available to a claimant, and nothing in the 2005 amendments to the Act, as discussed above, implies a legislative intent to return

the positional risk test to its pre–1986 status. Currently to establish the required employment-related nexus, a claimant has the onus of presenting evidence that the risk underlying the injury was either an actual risk of the employment, *Odyssey/Americare*, 1997 OK 136 at ¶ 13, 17, 948 P.2d at 312–313 (discussing *Stroud Mun. Hosp.*, 1996 OK 127, 933 P.2d 872 ), or, if a risk common to the general public, that the employment exposed the claimant to an heightened risk of the injury. *Burns*, 1995 OK 58, ¶ 7, 903 P.2d at 291.

¶ 24 In *Superior Stucco v. Daniels*, 1995 OK 127, 912 P.2d 317, the work conditions required the claimant to be outdoors when he was shot in the arm by an unknown assailant in a drive-by shooting. The evidence was that the work site was located in a high crime area and that his continued presence outdoors in the area put him at a higher risk of injury than that of the general public. This Court found that there was competent evidence in the record to support the compensation award which required a finding that the injury arose out of the employment. *Id.* ¶¶ 8–9, 912 P.2d at 318–319.

¶ 25 As in *Superior Stucco*, there is evidence from which the trial court could have inferred that the conditions of Herring's employment put him at a higher risk of injury than that faced by the general public. Herring was working as a night watchman. K–Mart expected Herring to be on its premises except for time and area limited excursions to address any issues he might have. The employment conditions forced Herring to go to a location such as a convenience store or fast food establishment during the night for his personal comfort needs. It would be unreasonable for an employer to expect an employee to go without food or drink and without a restroom break during a seven-hour shift. There is evidence in the record that the employment conditions exposed Herring to more risks of injury from an act of violence than that of the general public because of the time of the employment, the type of employment, and the necessity of going to either a convenience store, fast food establishment, or a similar business to attend his personal needs.

¶ 26 K–Mart and its insurer rely on *Burns*. In *Burns*, Burns was killed when he was shot by an unknown assailant in a hotel while on a business trip. The trial judge found that, because Burns was on a work assignment as an employee, his death from the shot arose out of his employment. This Court applied the increased risk test and vacated the trial court's award. In *Burns*, there was no evidence showing Burn's death "was occasioned by some *employment-related risk*" more than the risk of criminal activity shared generally by the traveling public. Unlike in the present case, the record in *Burns* turned on the lack of evidence in that the claimant failed to "show that Burn's death was causally related to the risks incident to his mission for the employer."

¶ 27 K–Mart and its insurer also rely on *Floyd*, 2002 OK 58, 58 P.3d 197, to support their argument that Herring's injuries did not arise out of or in the course of his employment. In *Floyd*, Floyd was working an unscheduled shift from 6:00 p.m. until 9:00 p.m. at which time she signed out on a time sheet. She could have left but decided to stay on the premises and eat a meal that was provided to her free of charge. About fifteen minutes after she signed out, she slipped, fell, and injured her knee while refilling her drink. We found that there was competent evidence in the record to support a finding that Floyd was on a purely personal mission at the time of her injury, and, thus, the finding was conclusive and binding on this Court. *Id.* ¶ 16, 58 P.3d at 197. Unlike in *Floyd*, the record here supports a finding that Herring's injuries arose out of his employment.

## VI. CONCLUSION

¶ 28 There is competent evidence in the record to support the trial court's finding that the claimant's injuries occurred in the course of and arose out of his employment. There is nothing in the 2005 amendments which would preclude the trial court from finding that Herring's injuries were compensable. Thus the trial court's findings are conclusive and binding on this Court. *Id.* ¶ 13, 58 P.3d at 198. The Court of Civil

Appeals' opinion is vacated and the Workers' Compensation Court's order is sustained.

**OPINION OF THE COURT OF CIVIL APPEALS VACATED; ORDER OF THE WORKERS' COMPENSATION COURT SUSTAINED.**

ALL JUSTICES CONCUR.